**DAVIS, Director General of Railroads, v. CAROLINA COTTON & WOOLEN MILLS CO.**

(Circuit Court of Appeals, Fourth Circuit. April 14, 1925.)

No. 2279.

1. **Negligence** ⊜⟿62(3)—**Condition of smokestack, which fell and carried down wire across railroad track, held not proximate cause of injury to trainman by wire.**

Where badly rusted smokestack of mill, blown down by high wind of not extraordinary force, in falling tore down wire crossing railroad track, which was subsequently fastened to pole by workman, so that trains could pass under it, but not sufficiently high to clear head of man on top of train, *held*, that condition of smokestack was not proximate cause of injury to trainman, who was swept off top of train by wire.

2. **Master and servant** ⊜⟿302(2)—**Mill held not responsible for act of member of gang engaged in moving its coal, who moved wire torn down by falling of smokestack.**

Where employé of civic association of town was told by manager of association's outside work to take gang to help defendant mill move its coal, *held* that, even if members of gang, while engaged in such work, were in mill's employ, it was merely for purpose of moving coal, and mill was not answerable for result of action of member of gang in moving wire, which fell on railroad track when mill's smokestack was blown down.

Woods, Circuit Judge, dissenting.

In Error to the District Court of the United States for the Western District of North Carolina, at Greensboro; James E. Boyd and Edwin Y. Webb, Judges.

Action by James C. Davis, Director General of Railroads, against the Carolina Cotton & Woolen Mills Company. Judgment for defendant, and plaintiff brings error. Affirmed.

W. M. Hendren, of Winston-Salem, N. C. (Clement Manly and B. S. Womble, both of Winston-Salem, N. C., on the brief), for plaintiff in error.

Oscar L. Sapp, of Greensboro, N. C. (Robert R. King and Robert R. King, Jr., both of Greensboro, N. C., on the brief), for defendant in error.

Before WOODS, WADDILL and ROSE, Circuit Judges.

ROSE, Circuit Judge. The parties occupied before us the same relative positions as they did below; that is to say, the Director General of Railroads, the plaintiff in error in this court, was plaintiff below, and the Carolina Cotton & Woolen Mills Company, was defendant in the District Court, and is defendant in error here. It will tend to readier apprehension of the facts if the parties be referred to as the railroad and as the mill, respectively:

The controversy had its origin in something which happened in Spray, N. C., on St. Valentine's Day in the year 1919. At that time and place a high wind was blowing. There was nothing extraordinary about its force or its velocity. It was what might have been expected at that season. It, however, blew down a badly rusted smokestack on one of the buildings belonging to the mill and used by it. In falling, the stack brought down from position a number of wires which crossed the tracks of the railroad. Among them was one or more belonging to the Western Union Telegraph Company. At that place, the railroad apparently ran through something of a cut. A man named Odell picked up a fallen wire, got up on a cinder pile, and reached up as high as he could, and made it fast to a pole standing on the bank above the tracks. In the position in which he placed it, it was elevated enough to allow a locomotive and cars to pass under it, but it was not sufficiently high to clear the head of a man who was standing on top of a car. While it was in this position, a freight train passed under the wire, and one of the train crew named Smith was swept off a car by the wire and was seriously injured. He brought suit in the United States District Court for the Western District of North Carolina against, not only the then Director General of Railroads, but the railroad as a corporate entity, the Western Union Telegraph Company, and the mill. When the case was called for trial, Smith submitted to a nonsuit so far as concerned the Western Union Telegraph Company, the mill, and the railroad, as distinguished from the Director General.

The plaintiff in the instant case unavailingly objected to the abandonment of the suit against the mill, having already notified the latter that he expected it to indemnify and reimburse him for all sums that he might be required to pay Smith as damages and as costs and expenses. The trial proceeded against the present plaintiff, whom we will again refer to as the railroad, and against no one else. It resulted in a judgment against him for $12,000, on the ground that the railroad knew or should have known of the dangerous position of the wire, and should have warned Smith of it. He subsequently settled with Smith for $10,000 and $258.84 costs, these sums aggregating $10,-258.84, and for the additional sum of $224.-78, paid by the railroad as costs and expenses incident to the trial, making a grand total of $10,483.62, for which the present suit was brought.

[1] At the close of the testimony, the court, at the motion of the mill, directed a compulsory nonsuit, and the railroad sued out this writ of error. We may put aside at the start any question of the mill's liability in consequence of the condition of the smokestack which fell. Such fall was not the proximate cause of the harm done Smith. He would not have been hurt, had it not been for the subsequent action of Odell in lifting the wire from the track and making it fast in a position in which it was highly dangerous to any one on top of a freight car passing under it.

[2] Many questions have been discussed in the case, some of them of great interest and nicety, but it will be clearly unnecessary to consider any of them unless the railroad has sustained the burden resting on it to present evidence from which the jury would have been justified in finding that the mill was answerable for what Odell did. It is admitted he was not one of its regular employees. He testified that on that day he was working for Mr. Chatham, moving coal from one of the mill buildings to another, and that what he did with the wire was done under Mr. Chatham's direction. That was all the evi-

dence offered by the railroad on the subject of his relationship to the mill. The latter on its behalf proved that Chatham was an employee of the Spray Civic Association, an incorporated body made up of the different companies and mills located at Spray. His brother was the general manager of the outside work of the association. There was at the time a shortage of labor, and his brother told the witness to take a gang of men and help out the mill, by moving coal from one of its buildings to another. Odell was one of these men, and had, prior to raising the wire, been engaged for four hours or more in handling the mill's coal. The witness and the men under him were paid by the Spray Civic Association. That is all there is in the record on the subject. It is obviously insufficient to make the mill answerable for what Odell or Chatham did. If they were at the time in the employ of the mill, it was merely for the purpose of moving coal, and that they were called upon to handle the wire by it or by any one authorized to speak for it, is not shown.

The learned court below was, we think, right in holding that the plaintiff had not made out its case.

Affirmed.

WOODS, Circuit Judge (dissenting). I think the motion for nonsuit should have been refused. The issue was whether the Carolina Cotton & Woolen Mills Company was guilty of the primary negligence which resulted in the recovery by Smith, the injured man, against the Director General. If it was, then it seems to me the case falls under the exception, stated in Union Stockyards v. Chicago, P. & Q. R. R., 196 U. S. 217, 226, 25 S. Ct. 226, 49 L. Ed. 453, 2 Ann. Cas. 525, to the general rule that one wrongdoer cannot recover indemnity or contribution from the other, and that the Director General has the right to recovery of the amount paid Smith.

The evidence falls far short of proving that the primary negligence in taking up and restringing the wires was that of the Spray Civic Association, and not of the Carolina Cotton & Woolen Mills. The Spray Civic Association was an incorporated society, made up of cotton mills and other local corporations. The defendant, Carolina Cotton & Woolen Mills Company, was one of the owners and stockholders. The object and duties, if any, of the association, do not appear from the evidence. J. W. Chatham testified that he was regularly employed by the Spray Civic Association; but on the day

5 F.(2d)—37

of the injury of Smith, and the day before, he was in charge of a gang of men working for the Carolina Cotton & Woolen Mills Company in moving coal from one mill to another. He testified that he had been told to do this work by his brother, who was general manager of the outside work of the Spray Civic Association. The brother did not testify, and there was no evidence that the Civic Association controlled the men, and were responsible for them while they were engaged in the work of the defendant cotton mill, nor was there any evidence that the Civic Association had any duty of removing the débris from the fallen smokestack and wires, or that it had any reason to concern itself with the accident.

On the contrary, the Carolina Cotton & Woolen Mills Company owed the urgent and primary duties of immediate removal of obstacles which constituted a nuisance from the railroad, and the restoration of the telegraph wires to a safe position, because of its gross carelessness in allowing an obviously dangerous smokestack to stand over and fall upon the railroad and wires. Accordingly, as soon as the smokestack fell, we find men who were employed in the mill and doing its work leaving that work and going immediately to the scene. They undertook the removal of the débris and restoration of the wires. All of this seems to be cogent evidence that Chatham, Odell, and the men who were working with them were the servants of the mill and doing its work in stringing the wires by which Smith was injured.

In addition to this, the following paragraph of the Carolina Cotton & Woolen Mills Company's answer to the motion of Smith is strong evidence that the negligent work of removing and restringing the wires was done by persons who were the servants of the cotton mill and acting under its orders:

"In answer to the allegations in article II of the complaint, defendant admits that it had actual knowledge shortly after the section of said smokestack had fallen, and avers that it immediately sent and removed the same, and removed all wires over which it had any authority which crossed said railroad track; that it notified its codefendant, the said telegraph company, that said telegraph company's line or lines of wire had been lowered from their original and normal position of suspension, so as to sag or fall across said railroad track, and also notified its codefendant, the said railway company, of the location of said wires, and further notified the train crew, of which plain-

tiff was a member, and the persons having charge of said train crew, of the location of said wires, and each and every allegation in article II of the complaint not herein admitted and inconsistent herewith is untrue and denied."